FILED

3:48 pm, 11/18/10

Tim J. Ellis
Clerk of Court

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DARRELL ROBERT SAMUEL STEELE | ) | Case No. 09-21218 |
| and MARIA ISABEL STEELE, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM OPINION DENYING CONFIRMATION OF DEBTORS' AMENDED CHAPTER 13 PLAN DATED JULY 26, 2010

On September 23, 2010, this matter came before the Court for an evidentiary hearing on confirmation of the Debtors' Amended Chapter 13 Plan dated July 26, 2010 and the objection filed by the Trustee. Darrell and Maria Steele ("Debtors") were represented by Stephen Winship. Mark Stewart, the standing chapter 13 trustee ("Trustee") represented himself. The Court having reviewed the record, testimony and evidence, and arguments of the parties is prepared to rule.

The Debtors initially filed their bankruptcy petition as a chapter 7 case on December 2, 2009. On March 24, 2010, the case was converted to a chapter 13. Debtors filed their original chapter 13 plan on April 30, 2010. The plan was subsequently withdrawn by the Debtors on July 1, 2010 and Debtors filed this Amended Plan and an Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Amended Form B22C"). The Trustee objected to confirmation of the Amended Plan. The Debtors filed a Memorandum in Support of Debtors' Confirmation of the Amended Chapter 13 Plan on September 21,

2010. After the hearing, the Court allowed the Trustee to file a reply brief. Subsequently, the Debtors filed "Debtors' Supplemental Exhibits" and as late as November 9, 2010 filed the "Supplemental Authority in Support of Plan Confirmation." The Trustee has not filed an objection to either of the Debtors' documents filed after the hearing. Therefore, the Court assumes that he does not object to the Court's review and consideration of the documents in considering this plan confirmation.

The Trustee's objection to confirmation of the Amended Plan include: (1)The Debtors claim: (a) a housing and utilities adjustment that is $681.00 more than the standard; (b) contributions of $250.00 per month to Mrs. Steele's father in Guatemala; (3) an additional food and clothing expense; (4) a monthly charitable expense; (5) future payments of a vehicle loan; (6) basic mathematical errors in the plan calculations; and (7) the Debtors' Amended Form 22C, provides calculations as of the date of the amendment, contrary to the computation period as set forth by the Bankruptcy Code.

**Discussion**

If the trustee objects to confirmation of the plan, the court may not approve the plan unless, as of the effective date of the plan, the plan provides that all the debtor's projected disposable income to be received during the term of the plan will be applied to make payments to unsecured creditors under the plan.[1]

---

[1] 11 U.S.C. § 1325(b)(1)

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 defined "current monthly income" as the debtor's actual income, from all sources, except social security and certain victim payments, received during the six months prior to filing. Form 22C is used to calculate "current monthly income," to determine whether the income is above or below the applicable median income, and, if so, to calculate disposable income. The United States Supreme Court held that a court calculating "projected disposable income" should begin with the "presumption" that the figure yielded by the mechanical approach was correct, but that the figure could be rebutted by evidence of substantial changes in debtor's circumstances that are known or virtually certain.[2]

To overrule a trustee's objection to confirmation of a plan because the monthly income to be paid into the plan is not equal to the monthly disposable income reported on Form 22C, the court must find there has been a change in circumstances, documented in a manner similar to that specified by 11 U.S.C. §707(b)(2)(B)(ii). The Debtor, as the proponent of a plan, has the ultimate burden of proof to show that a proposed plan satisfies the projected disposable income requirement for confirmation.

Housing and utilities adjustment.

On Form 22C, Line 26, the Debtors claim an adjustment for housing and utilities. Mr. Steele testified that the Debtors pay $1,500.00 a month for rent, which is substantially higher than the average allowance for housing and utilities allowed by the Local

---

[2] *In re Lanning*, 130 S.Ct. 2464 (2010).

Standards. Mr. Steele testified that the Debtors have three children: a daughter - 16 years old; a son - twelve years old; and, a second daughter - seven years old. Due to their ages, it is difficult, if not impossible to put the daughters into one bedroom. The youngest daughter has an earlier bedtime, while the older daughter needs more privacy. This along with the fact that the Debtors do not want to put their son in with either of the girls, requires the family to have a four-bedroom house. Mr. Steele testified to the difficulty of finding an appropriate house in Casper. He testified that four bedroom apartments are not readily available and that housing is expensive. Additionally, the Debtors have found a house to rent in the neighborhood where the children attend school, lessening transportation costs. Mrs. Steele did not testify to the additional housing and utility expenses.

"[T]he debtor's monthly expenses may include an allowance for housing and utilities in excess of the allowance specified by the Local Standards...based upon the actual expense for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary."[3] The Debtors testified and demonstrated to the Court that the actual rental expense is greater than the allowable standard and appropriate housing is difficult to find. The Debtors demonstrated to the Court that the actual rental expenses are reasonable and necessary for the health and well-being of their children. The expense is allowed.

---

[3] 11 U.S.C. §707(B)(2)(b)(ii)(V).

Page 4

Contributions to Mrs. Steele's father

Debtors' Amended Form 22C reflects a "continued contribution to the care of household or family members" in the amount of $250.00. Mrs. Steele testified that the funds are sent to Guatemala for her father's rent. She testified that she has been doing this consistently since 2004. She also testified that the logistics of getting the funds to her father are complicated. Generally, each month the money is sent to Mrs. Steele's aunt and then given to her father. The funds have been sent by check, wire transfers or delivered personally by Mrs. Steele's mother. The failure to provide these funds to her father would result in her father being homeless. The option of moving her father to the United States is not practical as (1) her father does not want to leave his home country; and, (2) expenses would even be greater.

A debtor may deduct from his current monthly income expenses for the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member of the debtor's immediate family (including parent, grandparents, siblings, children and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.[4] Mrs. Steele testified that the payments to her sixty-five year old father are for rent which he cannot pay himself. She also testified that she has a history of

---

[4] 11 U.S.C. § 707(b)(2)(A)(ii)(II).

making the payment, in spite of the logistical challenge of getting the funds to Guatemala. She has had to make convoluted payment arrangements to insure that her father is not homeless. The Court finds that the Debtors met the burden of proof to establish the elements for the deduction. Therefore, the expense deduction is allowable.

Additional food and clothing expense

"If it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standard issued by the Internal Revenue Service."[5] The Court's review of the record shows that the Debtors did not testify or provide evidence in support of the additional food and clothing expenses. Therefore, the expense is denied.

Charitable contributions

Debtors claim a deduction for charitable contributions in the amount of $100.00 per month on Form 22C, Line 45. The Debtors presented evidence of their contribution to St. Patrick's Catholic Church for a total amount of $350.00 for the period of January 1, 2010 through June 30, 3010. Mrs. Steele also testified that the children give cash in the amount of $5.00 to $10.00, when they attend church. The testimony regarding attendance did not support the goal that the Debtors attend weekly, and thereby, the children contributed cash every week. The Debtors' exhibit indicated that they attended 12 times

---

[5] 11 U.S.C. § 707(b)(2)(ii)(I).

during the six-month period. Mrs. Steele also testified that the family had not attended every week. The amount of cash contribution was speculative and undetermined. The evidence shows Debtors actually contributed an average of $58.33 per month for the first six months of 2010. Therefore, the Debtors are allowed $58.00 a month for charitable contributions based on the testimony and evidence presented.

Vehicle loan payments

The Debtors deduct the future payment on secured claims to Silver State Schools CU, for the Yukon in the amount of $405.99 on Amended Form 22C, Line 47. Mr. Steele testified that the loan for the Yukon was for 72 months, with a monthly payment of $564.80. At the time that the Debtors filed their bankruptcy, Mr. Steele testified that there were 40 payments remaining. In determining the average monthly payment, the Court calculates that the deduction should be $376.53 ($564.80 x 40 ÷60 = $376.53). Therefore, the deduction should be modified to correct the mathematical error.

Student loans as a "special circumstance"

The "special circumstances" provision is a financial condition that justifies including an additional expense or reducing income for which there is no reasonable alternative.[6] The two examples of special circumstances, cited in the Bankruptcy Code[7] are not the only circumstances that the Debtor may rely, not even archetype circumstances.[8]

---

[6] *In re Jackson*, Case No. 07-21717, 2008 Bankr. LEXIS 3679 (Bankr. D. Kan., Dec. 5, 2008).

[7] 11 U.S.C. §707(b)(2)(B).

[8] *In re Robinette*, No. 7-06-10585, 2007 Bankr. LEXIS 3523, (D. N.M., Oct. 2, 2007).

A debtor seeking to establish special circumstances must comply with the procedural requirements of §707(b)(2)(B)(ii) and (iii) which require: (1) the debtor shall itemize each additional expense or adjustment of income; (2) provide documentation for such expense or adjustment to income; and (3) provide a detailed explanation of the special circumstances that make such expense or adjustment to income necessary and reasonable.[9] The Debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required. The debtor has the burden of proof to show special circumstances that justify additional expenses or adjustments of their current monthly income for which there is no reasonable alternative.

The Debtors in this case itemized the additional expense on their Amended Form 22C in the amount of $490.00 for student loans. This debt was incurred to provide Mrs. Steele her education as an accountant. Mrs. Steele testified that the amount of the monthly payment and her intent to keep the student loan current as the debt "won't go away" during the time the parties are in bankruptcy and the interest continues to accumulate increasing the amount owed at the conclusion of the bankruptcy case. Mr. Steele testified that the loans were for Mrs. Steele and that he was "just a co-signor." The Debtors failed the last two elements of the procedural requirement when claiming a special circumstance. Debtors are required to provide documentation for such expenses or adjustment to income; and a detailed explanation of the special circumstances that

---

[9] *Jackson* at 7.

make such expense or adjustment to income necessary and reasonable. The Debtors did not provide any documentation for the student loan expense nor gave a detailed explanation of the special circumstances that make the student loan payment a necessary and reasonable expense. The Court only knows the amount of the monthly payment, the length of the payments and the purpose of the student loans. The Debtors did not meet the procedural requirements establishing a special circumstance.

The bankruptcy courts have developed different standards for determining whether a student loan debt is a special circumstance. The "per se rule" focuses on the characteristics of the student loan and the resulting economic hardship. The fact that the debt is non-dischargeable is an overriding factor under the "per se rule" standard. Student loan debts are generally unsecured non-priority debts. If the debtor is not allowed to include the student loan payment as a special circumstance in the plan, the loan payment is included in the other Class 7, non-priority unsecured debtor pro-rata distribution. Generally this lowers the student loan payment during the life of the plan resulting in the debtor incurring additional interest debt on the loan. At the end of the plan, the balances owed on these debts are discharged, except for the student loan debts. Courts following the "per-se rule" hold that because the student loans are non-dischargeable, they are "per-se," a special circumstance.[10]

Another view that courts have held is that having a student loan is not rare or unusual. Debtors must show that their loan was incurred in other than in the ordinary

---

[10] *In re Robinette*, No. 7-06-10585, 2007 Bankr. LEXIS 3523, (Bankr. D. N.M., Oct. 2, 2007).

Page 9

course of acquiring their education. It is not the obligation to repay the loan itself that qualifies it as a special circumstance, but the circumstance that lead to incurring the loan must be special and justify the inclusion of this additional expense. Non-dischargeability, alone cannot be a special circumstance. Courts following this view assert that Congress has had the opportunity to provide that student loans are more than unsecured debts when it established them as non-dischargeable, but did not do so. [11]

This Court declines to adopt the per-se rule. In the case before the Court, it finds that the Debtors failed to provide testimony that the loans were incurred in other than in the ordinary course of acquiring Mrs. Steele's education. Neither Debtor testified that there was no reasonable alternative than to make the payments through the plan under Class 7 and then after the completion of the requirements of a confirmed plan, pay the balance of the student loans. The Court's review of the Debtors' petition, schedules and claims shows that the Debtors listed $340,164.95 of non-priority, unsecured debt on their Schedule F. The claims registry shows that the amount of $102,589.25 non-priority unsecured claims were filed. Debtors' proposed plan provides for a distribution to Class 7 unsecured claims in the amount of $43,409.00 resulting in a distribution of approximately 20 percent. The Court finds that the Debtors will be in a much better position to pay the student loan obligation upon exiting from bankruptcy, without

---

[11] *In re Champagne*, 389 B.R. 191, (Bankr. D. Kan., 2008).

impacting the other non-priority unsecured claim distribution.[12] The deduction of the student loan as a special expense is disallowed.

<u>Projected monthly income</u>

Debtors list as their projected disposable income on Amended Form 22C, Line 59 the amount of $743.75. Calculating that amount times the Debtors' applicable commitment period of 60 months, the Court finds that the Class 7 unsecured creditors should receive a distribution of $44,625.00.[13] This Court has previously held that is the presumptive amount to be paid to non-priority unsecured creditors under the plan. However, Debtors' plan proposes to pay a total of $43,409.00 to unsecured claims under Class 7. Additionally, Mr. Steele testified that his income had changed since the bankruptcy was filed, as he had received a raise. Mrs. Steele testified that her income was the same. The United States Supreme Court held that the "forward looking" approach could be used in calculating "projected disposable income" as courts have the discretion to account for known or virtually certain changes in the debtor's income and expenses. Therefore, the Debtors' projected income requires modification based upon Mr. Steele's wage increase and the mathematical errors.

---

[12] Debtors provided the Court a "Supplemental Authority in Support of Plan Confirmation referring the Court to the Internal Revenue Manual and a website. The Court's attempt to pull up the website resulted in the message, "The requested page does not exist." The Court, finding no case law supporting the Debtors' attempt to have the Court use the Internal Revenue Manual for this manner, does not adopt this analysis.

[13] This calculation is based upon the Amended Means Test and does not take into consideration the disallowance of expense deductions the Court is ruling on in this order.

Form 22C

It is apparent to this Court that *Lanning* provides debtors guidance in determining projected disposable income. The debtor is first required to properly complete the Form 22C (the mechanical approach), beginning with the current monthly income and expenses. Then upon confirmation, the Debtors and/or objecting parties can attempt to modify the projected disposable income by presenting evidence and testimony of "known or virtually certain changes in the debtor's income and expenses."

For the reasons stated, the Debtors' Amended Chapter 13 Plan dated July 26, 2010 cannot be confirmed. This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 18 day of November, 2010.

By the Court

_____
HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Stephen Winship
    Mark Stewart